**HERR, Admrx. v HERR et**

Ohio Appeals, 2nd Dist, Greene Co

No 450. Decided Nov 30, 1939

John W. Dale, Dayton, for plaintiffs-appellants.

Harry D. Smith, Xenia, for Daniel Lang, et, defendants-appellees.

Munger & Kennedy, Dayton, for Anna Boedeker, defendant-appellee.

**OPINION**

By HORNBECK, PJ.

This action had its inception in the Probate Court of Greene County, Ohio, from the judgment of which Court

there was an appeal to the Court of Common Pleas, and from that Court an appeal to this Court on questions of law and fact.

There is a stipulation as to the testimony which is embodied in the short bill of exceptions.

In the petition filed in the Probate Court, plaintiff, Katie Lang Herr, Administratrix, alleges that Peter Lang died leaving a will, setting out the defendants whom she alleges to be legatees and devisees mentioned in the will of Peter Lang. She asserts that she is in doubt as to the true construction of said will, and that she cannot safely proceed without the direction of the Court, and prays for judgment and direction in regard thereto.

Anna M. Boedeker and others answered. to the effect that she is the daughter of Peter Lang, and that the other three answering defendants are her sole children, all past the age of majority, being the grandchildren of Peter Lang, and that George Boedeker is her husband; that the defendant, Daniel Lang, is the son of Peter Lang, and the said Emma Kendig is his sole child and a granddaughter of Peter Lang; that the defendant, Katie Lang Herr, is the daughter of Peter Lang, and the six enumerated defendants are her sole children, all of whom are grandchildren of Peter Lang.

It is alleged that Peter Lang died on June 25, 1923, leaving surviving his widow, Mary Ann Lang, who is now deceased.

The answering defendants join in the prayer of plaintiff's petition, asking the court to construe the provisions of the will—"particularly as to whether said defendants, Daniel Lang, Katie Lang Herr, and Anna M. Boedeker have life estates only in the estate. or whether they have a vested estate and a fee simple title to the real estate of Peter Lang, deceased."

The Probate Court rendered judgment as exemplified by an entry of August 12, 1938, from which a notice of appeal was given to the Court of Common Pleas, both by the plaintiff and a number of defendants.

The Court of Common Pleas, on August 17, 1939, rendered a judgment substantially the same as that of the Probate Court, to the effect that Items I. II and III need no construction, but that Item IV is to be construed as set out at length in said entry.

Notice of appeal from the judgment of the Court of Common Pleas was given by the plaintiff and by certain of the defendants.

The appellants for their assignment of errors alleged to have been committed to their respective prejudice by the Probate Court and the Court of Common Pleas, state as follows:

"ERROR IN THE PROBATE COURT.

1. That the judgment of the Probate Court is contrary to law.

2. That the Court erred in finding that the estate passed to the grandchildren of the Decedent, per stirpes instead of per capita."

"ERROR IN THE COMMON PLEAS COURT.

1. That the judgment of the Common Pleas Court is contrary to law.

2. That the Court erred in sustaining and affirming the judgment of the Probate Court of Greene Co., in this case.

3. That the Court erred in finding that the estate passed to the grandchildren of the decedent, per stirpes, instead of per capita."

Items I and II of the will have no relation to the questions to be determined. By Item III, the testator devised to his wife, Mary Lang, all the household goods for and during her natural life; that other personal property be turned into money by the executor, the proceeds by him to be held in trust and invested according to law, the income to be paid to the wife during her natural life, or so long as she remains the widow of the testator.

He also devises and bequeathes to his wife the income from all the real estate for all her natural life, or so long

as she remains the widow, provided she pay taxes.

Item IV is as follows:

"ITEM IV. At time when rights of my said wife ceases, either under the law or under this will, in any of my said property, or at my death, should I outlive her, there being children living at any of said times, I give, devise and bequeath to my said executor hereinafter named, or his successor, in trust to hold, manage and invest according to law, such child's or children's interest, and the proceeds thereof to pay to my said legal heirs and representative in shares according to law. But, at the death of any of my children, their legal heirs and representatives shall come into possession of that deceased child's share at once, and take it in fee simple, in such shares as provided by law. If all of my children be dead at my decease, and my said wife be also then dead, or at time when rights of my said wife ceases to or in my said property as aforesaid, then I give, devise and bequeath the residue of my said property to my legal heirs and representatives according to law. The word "children" as herein used does not mean "grandchildren".

However, if my said children can amicably agree upon a division of the real estate among themselves, they may so divide the real estate among themselves as they think best and may control and manage the portion of the real estate set off to each, and after paying the taxes thereon and keeping the same in reasonable repair, use the income thereof to their own benefit. But they are given only a life estate, and the said real estate is to pass to their heirs in fee simple."

Peter Lang left surviving, in addition to his wife, three children, Katie Lang Herr, Daniel Lang and Anna M. Boedeker, all of whom are now living. Daniel Lang has one child, Emma Kendig; Anna M. Boedeker has three children, Edith Ballman, Ed Boedeker and Carl Boedeker; Katie Lang Herr has six children, Peter G. Herr, Frank L. Herr, Marie Groth, Emma Herr, Anna Freeders and Charles Herr.

The real estate of the decedent consists of about eight hundred (800) acres of land in Greene County, and ten (10) tenant houses in Fairfield, Greene County, Ohio, and personalty amounting to about $50,000.00.

The Probate Court and the Common Pleas Court construed the will in the same manner. It was held generally that under Item IV of the will a trust was created for the benefit of the legal heirs of decedent, (his three children) for and during their natural lives, subject to certain changes, reductions or extinguishments of said real estate in the event of the death of any or all of said children.

That the life estate so vested in the children of decedent is coupled with a power for amicable division of the real estate which, if executed, will remove the real estate from the control of the fiduciary and each child is thereby permitted to manage, control and receive the benefits from the real estate so selected by him (subject to payment of taxes and keeping same in reasonable repair) exclusive of any interest or claim of any other child of the decedent but that the interest of each child in the land so selected by him is but a life estate.

That if amicable division of the real estate is made and a child of testator die, then the children of such deceased child inherit the land so selected by their ancestor in fee simple and a full one-third interest in the personal property remaining in the hands of the fiduciary to be distributed among them according to law.

That if amicable division of real estate be not made the legal heirs of each child of testator shall inherit one-third part of the estate, both real and personal, in fee simple at the time of the death of the ancestor through whom they claim.

Certain of the parties excepted to that part of the construction of the will which held that the estate of each

child of testator, if amicable division of the real estate be made, cannot be enlarged to a fee simple estate but remains a life estate only in such child in the portion so set off to him or her.

Other parties, namely, Katie Lang Herr, individually, as administratrix, and her six children except to the construction of the will to the effect that "the legal heirs of each child of testator inherit the 1/3 part of the estate per stirpes and not per capita."

Thus there are presented two main questions for determination. First, what interest do the children of the testator, Peter Lang, take under Item IV of his will, if they exercise the power there created to make amicable division of the real estate among themselves? Two, in what proportions do the grandchildren of the testator take their shares under said item?

It is our judgment that the Probate and Common Pleas Courts correctly construed this item in all particulars and in their written opinions, both of which we have before us, set forth the reasons which require the construction made by them. We shall attempt to avoid unnecessary repetition.

On the first question the most cogent and convincing language in the item is found in the last sentence thereof, "But they (testator's children) are given only a life estate, and the said real estate is to pass to their heirs in fee simple." This language expresses with clarity the meaning and intent of the testator. It is true that it is a part of the paragraph discussing the amicable division of the real estate among testator's children but in our judgment it is in harmony with all of the other language of the item. For instance, the first part of the item placing the shares of the children in the real estate of testator in trust and to be paid to them as provided is followed by the expression, "But, at the death of any of my children, their legal heirs and representatives shall come into possession of that deceased child's share, at once and take it in fee simple in such shares as provided by law". Clearly here is provision for an

estate over and beyond the children of the testator, namely, to the grandchildren of the testator and it is expressly defined as a fee simple estate. It is a vested remainder in the grandchildren.

The next sentence is the only one in the item which is at all difficult of interpretation and this difficulty does not extend to the question of the nature of the estate created by the other parts of the item. It can have no application because the controlling contingency cannot occur, namely, that "all of my children be dead". To give this portion of the item meaning, all of the children of the testator must be dead at his decease and his wife also then dead, or, all of the children be dead when the rights of the wife to and in the property shall have ceased. Inasmuch as all of testator's children were living at the death of their mother, that portion of the item can never be effective. If it were effective the question of per stirpes or per capita distribution would be vital.

A determination of the second question propounded is found in the language of the item and requires no recourse to rules of construction except to give meaning to all parts of the will, if possible. We are not put to the necessity of applying the rule of per stirpes or per capita construction as affecting the interests of the grandchildren because the purpose of the testator is manifest from the language which he employed. We do not dispute the principles controlling per stirpes and per capita distribution as announced in the minority opinion. Again the last paragraph is decisive of the purpose of the testator if his children survive him and his widow's estate has terminated. Here he provides for an amicable division of the real estate among his children in which event they are to control and manage the portion of the real estate which has been set off to them, paying the taxes thereon and keeping the same in reasonable repair. They are given but a life estate and at their death the real estate which has been set off to them is to pass to

their heirs in fee simple. This language is explicit. The specific real estate which by agreement has been set off to each child of the testator, upon his or her death, passes to his or her heirs, not to the heirs of another child. The first two sentences of the item apply if any or all of the testator's children are living when the estate of his widow ceases by death or marriage. The third and fourth sentences of the item control if all children are dead when the estate of the widow terminates. Any other construction would create a conflict between the first two and the following two sentences of the item.

In the first two sentences of the item is found the language, "But, at the death of any of **my** children, **their** legal heirs and representatives shall come into possession of **that deceased child's share at once,** and take it in fee simple, in such shares as provided by law". (Emphasis ours). That is to say that upon the death of any of testator's children, all having survived their mother, their legal heirs are to come into possession of the share of their parent. Every word in this sentence indicates that the share which a child of the testator has enjoyed is at his or her death to pass to his or her legal heirs or representatives in the proportion that it would have passed had the parent owned the title in fee and had died without will, i. e., in such share as provided by law. A per capita distribution would enable the children of a child of the testator who was living and enjoying his life income in a third of the real estate upon the death of another child of the testator to take a share in the fee simple estate so vested. This would be the antithesis of the intention of the testator in the situation whenever expressed in the item. The grandchildren of the testator will take in the proportions defined by the will as heretofore indicated.

Judgment accordingly.

BARNES, J., concurs.
GEIGER, J., dissents.

GEIGER, J., Dissenting:

I find it necessary to dissent from the opinion of my associates. The main question is whether or not the grandchildren take per stirpes or per capita. If they take per stirpes, the one child of Daniel Lang takes a full 1/3 of the estate, the three children of Anna Boedeker each take 1/9 of the estate, the six children of Katie Lang Herr each take 1/18 of the estate. If, however, they take per capita and not per stirpes, then each grandchild takes 1/10 of the entire estate of Peter Lang. It will thus be seen the question is of prime importance, considering the size of the estate.

Taking per stirpes means, by representation. If the grandchildren in this case take per stirpes, they take because they represent their parents. If they take per capita, they take directly in their own right, and not because they represent anyone else.

When the claimants are all in the same degree of kindred, they take as next of kin, but when one or more are more remote than others they take by representation, per stirpes, what their parents would have taken.

In Kent's Commentaries, p. 425, the Chancellor states:

"It is the doctrine under the statute of distributions, that the claimants take per stirpes only when they stand in unequal degrees, or claim by representation, and then the doctrine of representation is necessary. But when they all stand in equal degrees * * * they take per capita, or each an equal share;' because in this case, representation or taking per stirpes, is not necessary to prevent the exclusion of those in a remoter degree; and it would be contrary to the spirit and policy of the statute, which aimed at a just and equal distribution."

This comment, of course, is addressed to the provisions of a statute which may not be similar to our own, but illustrates the difference between the two estates, and the reason therefor.

The Chancellor further states to the

effect that when the heirs are all in equal degree they inherit **per capita** or equal portions, and when they are in different degrees they inherit **per stirpes,** or such portion as their immediate ancestors would have inherited if living. Inheritance per stirpes is admitted when representation becomes necessary to prevent the exclusion of persons in a remoter degree.

Schouler, on Wills, 6th. Add., Sec. 1030, states in substance that where all persons entitled to share stand in the same degree of kin to the decedent, for instance all grandchildren, and claim directly from him in their own right, and not through some intermediate relation, they take per capita. But where they are of different degrees of kindred, they take per stirpes, or according to the stock they represent. When they take as individuals they take per capita; when by right of representation— per stirpes.

This matter is discussed at some length in **41 O. Jur. 708, §594 et seq.** It is there stated that,

"The essential characteristic of a taker per stirpes is that he takes in a representative capacity and stands in the place of a deceased ancestor. The determining factor in construing a will and ascertaining whether the beneficiaries shall take per stirpes or per capita is the intention of the testator, which can be reached only by an examination of the language used, as applied to all the surrounding circumstances and the conditions present in the mind of the testator at the time the will was written."

"As a general rule, where a testator has left undetermined the proportions in which his beneficiaries are to take, the courts of Ohio, favoring equality, will direct the distribution to be per capita rather than per stirpes. But if the gift is substitutional as where children are to take their parent's shares, they take per stirpes."

Section 596 states:

"Ordinarily a gift to a class calls for a per capita distribution unless it clearly appears that the testator intended a different division. Whenever as a class the beneficiaries are designated by their relationship to some ancestor **living at the date of a will,** whether to the testator or to someone else, they share per capita and not per stirpes, especially if they are all of the same degree." (Emphasis mine).

Section 599 states:

"A reference to the Statutes of Descent and Distribution, such as a direction that the subject of the gift shall be divided 'according to the laws of the state', is sometimes treated as pointing out not only the persons who are to take, but also the proportions in which they are to take."

Section 600 is to the effect that when a testator designates the objects of his bounty by their relationship to their living ancestor, such legatees and devisees have been held to take equal shares per capita on the ground that the fact that the ancestor is living shows that they are not to take in his place, but that he is referred to only to designate the beneficiaries. In such case, the designated ancestor takes neither directly nor indirectly. The statement in the text is supported by the citations which have been examined.

**Section 10503-7** provides as follows:

"When all the descendants of an intestate, in a direct line of descent, are on an equal degree of consanguinity to the intestate, whether children, grandchildren or great-grandchildren, or of a more remote degree of consanguinity to such intestate the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be."

See also **§10503-8 and §10504-73.**

It will be noted that most of these statutes have reference to intestate property, and not to property devised

by will. However, the testator has used the expression "in shares according to law". "In such shares as provided by law". "To my legal heirs and representatives according to law". These expressions bring the final distribution of the estate under the Statutes of Descent and Distribution, as already referred to in §599 of O. Jur., as pointing out not only the persons who are to take but also the proportion in which they are. to take, and make the provision of the statute pertinent even though there be a will.

As to further discussion as to whether an estate is taken per stirpes or per capita, see **Broerman, Jr. v Kesling, 6 Oh Ap 7**, **Oakley v Davey, 49 Oh Ap 113**, **McMahon v McMahon, 3 Abs 668**, **Ferguson v Gasgill, 13 Abs 667** (both of the latter cases being by the Court of Appeals of the Second Judicial District), **Ewers v Follin, 9 Oh St 326**, **Hasse v Morrison et, 110 Oh St 153**. There are many other cases that might be cited.

Having determined what the law is, the difficulty arises in applying it to the case at bar.

The following seems to be a reasonable interpretation of the item under the surrounding circumstances and the conditions present in the mind of the testator at the time he made the will. He gave a life estate to his wife. All his children and grandchildren survived both the testator and the widow. Upon the death of his wife, the Executor was to manage "such child's or children's interest, paying the proceeds to his legal heirs and representatives", used to describe his three children. The word "heirs" when used in a will is flexible, and should be so construed as to give effect to the testator's manifest intention.

**Cultice v Mills, 97 Oh St 112.**

This provision vests in his children only an undivided life estate—"But at the death of any of my children, their legal heirs or representatives shall come into possession of that deceased child's share at once, and take it in fee simple in such shares as provided by law."

By the term "legal heirs or representatives of his children" are meant **their** children or his grandchildren, and vests in the grandchildren an estate in fee of that undivided interest of which the child dying had only a life estate.

"When rights of my wife cease to or in my property, as aforesaid, then I give, devise and bequeath the residue of my said property to my legal heirs according to law. The word 'children' as herein used does not mean grandchildren."

Such a provision, standing alone, would vest the estate in his three children upon the death of his wife.

It is said by Burket, J., in **Johnson v Johnson, 51 Oh St 446 at page 457**, after quoting the provision of the testator:

"That this part of the will standing alone, would give to the widow a fee simple, can not be doubted; and if what follows could be fairly construed as merely superadded words attempting to impose a limitation upon the fee thus devised, such limitation would, of course, be void, and the fee would remain."

**Linton v Laycock, 33 Oh St 128.**
**MinYoung v MinYoung, 47 Oh St 501.**

As showing the intent of the testator not to give to his children a fee simple estate, the last paragraph of the item provides "but they are given only a life estate, and the real estate is to pass to their heirs in fee simple." "Their heirs", I think means the grandchildren and does not necessarily mean that these grandchildren shall take per stirpes.

The will further provides that if his children can agree upon a division, they may divide the real estate as they think best, and control and manage the portion set off to each, and, after paying the taxes, use the income to their own benefit, this being followed by the above quoted provision that they have only a life estate.

This provision, however, does not deprive the grandchildren of their fee simple interest in the entire estate, rather than in one-third thereof which might be agreed upon by the joint action of all the children; the children of the testator taking only a life estate.

The net result of all this is that there is a life estate granted to the three children to be enjoyed after the termination of the life estate of their mother.

While each grandchild must await the death of his or her parent before enjoying the estate in fee simple, yet ultimately the grandchildren take, not because they represent their respective parent, but they take the fee directly in their own right. All are in the same degree of kinship and take as next of kin, and they take per capita—or each an equal share, because representation, or taking per stirpes, is not necessary to prevent the exclusion of those in a remoter degree.

The majority has stressed the fact that the will provides, that upon the death of any child of the testator, the property shall go to "their" heirs in fee simple. The majority assumes that the word "their" is used to indicate the heirs or children of the child who dies. This does not seem to me to be a correct interpretation of the word "their". Had the testator desired to accomplish that which the majority holds, he would properly have used the expression that would have clearly indicated, that upon the death of the child, the children of the one so dying should inherit in fee simple the portion held by their father or mother, as the case might be. It seems to me quite reasonable to interpret the word "their" as meaning the children of all the children of the testator, or all the grandchildren. This would simply mean that upon the death of any one of the three children of the testator, the entire group of grandchildren should inherit equally that which the child had held during life, to-wit, a one-third interest. Upon the death of all the children the grandchildren would all have inherited an equal part of the testator's estate.

To interpret the word "their" as the majority has done is to convict the testator of the misuse of a common word and the restriction of its use to the children of the child dying, rather than to all his grandchildren, whether they be children of his son or daughter, who may die, or children of the one who might die and of the ones who still live. The last words used by the testator, before he uses the word "their" are "any of my children". Had the testator wished to convey the property as indicated in the majority opinion, he should have said that upon the death of any one of my children the estate of such child should pass to his or her heirs in fee simple, or words to that effect. The interpretation of the word "their" given by the majority is not supported by the use made of it by the testator.

The majority reads into Item IV an intention of the testator to bequeath his property per stirpes, and not per capita, to his grandchildren. We will assume for illustration that the entire estate of the testator amounted to $150,000.00. If these grandchildren would take per stirpes, the single child of Daniel would take 1/3 of the ancestor's estate or $50,000.00. The three children of Anna would each take 1/9 of his estate or approximately $16,000. Each of the six children of his child, Katie, would take 1/18 of his estate or approximately $8,300.00. The three children and all the grandchildren were living at the time he made the will.

Nowhere has the testator shown any intention of favoring one grandchild over the other to the extent that would be accomplished if the majority interpretation is correct. The intention of the testator must be arrived at from considering the entire will and the circumstances surrounding its execution and the assumption that the testator desired to deal justly with those who would ultimately take his estate in fee simple. It must be remembered that the testator made no bequest of a fee simple title to any one of his children, but only gave to each a life estate with the fee finally vesting in his grand-

children. He had a purpose in mind in doing this and it is quite fair to assume that his purpose was to preserve the final distribution of his estate until the death of all his children, at which time it would be ultimately vested in his grandchildren equally per capita. There is no indication that the testator wished to penalize any of his grandchildren for the simple reason that some may have belonged to a larger family group than others.

It follows that there being ten grandchildren, each inherits one-tenth of the estate—subject, however, to the life interest of their respective parents.

I have arrived at a different conclusion from that of either of the Courts below and of my associates.